**STATE of Minnesota, Respondent,**

v.

**Karen Margaret GREINER, Appellant.**

**No. C8–93–1767.**

Court of Appeals of Minnesota.

June 28, 1994.

John G. Westrick, Walsh & Westrick, and Don M. Lattimore, Lattimore & Mooney, P.A., St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and James C. Backstrom, Dakota County Atty., Charles E. MacLean, Asst. County Atty., Hastings, for respondent.

Considered and decided by LANSING, P.J., and FORSBERG and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

Appellant Karen Greiner was convicted after a court trial of one count of temporary theft (aggregating). Minn.Stat. § 609.52, subds. 2(5)(a), 2(1), 3(2), 3(5) (1992). Greiner argues her prosecution was barred by the statute of limitations, and challenges the sufficiency of the evidence and admission of *Spreigl* evidence at trial. We reverse.

## FACTS

Gail and Michael Swor contracted orally with appellant in early 1988 to decorate the Swors' residence. The Swors paid 50% down, with the balance due upon delivery of each piece of merchandise. The down payments were made on individual items, as Greiner required a 50% down payment before she would order a piece of merchandise. Appellant did not charge a separate design or consulting fee, but added her own retail markup to the wholesale price of each piece. The Swors paid over $42,000 to appellant between May and December 1989, but received only about $20,000 in goods and services.

As appellant received each down payment, she deposited the funds into her personal checking account. Appellant used these payments for her own personal expenses and the needs of other clients. Appellant also converted some of the Swors' payments into cashier's checks, rather than depositing the funds, in order to hide them from her creditors.

The Swors made repeated demands for performance of the contract or return of their funds. Appellant either avoided their telephone calls or told them the merchandise was on back order. Appellant finally admitted to Mrs. Swor in the spring of 1990 that the Swors' money was gone and wouldn't be available to pay for any merchandise even if it was delivered. The Swors brought a civil action against appellant which was settled in August 1992. Appellant agreed to repay $18,000 to the Swors.

At a court trial in April 1993, appellant was convicted of one count of temporary theft (aggregating). Appellant challenges her conviction, citing the statute of limitations, insufficient evidence, and improper admission of *Spreigl* evidence.

## ISSUE

Was appellant's prosecution barred by the three-year statute of limitations?

## ANALYSIS

Appellant argues her prosecution was barred by the three-year statute of limitations, Minn.Stat. § 628.26(h) (1992). This issue requires the application of a statute to a particular set of facts. Court rulings on mixed questions of law and fact are not binding on an appellate court but are subject to independent review. *Meyering v. Wessels,* 383 N.W.2d 670, 672 (Minn.1986). The complaint against appellant was filed on November 19, 1992. To fall within the three-year limitation, appellant had to have been possessing, controlling or concealing the Swors' money on or after November 19, 1989.

Appellant was charged with theft by intent to exercise temporary control, which is a continuing offense under Minnesota law. *State v. O'Hagan,* 474 N.W.2d 613, 622 (Minn.App.1991), *pet. for rev. denied* (Minn.

Sept. 25, 1991). "[T]he offense continues for as long as the actor possesses the property and intends to exercise control or is exercising control over the property." *Id.*

■ The Swors wrote several checks to appellant between May and October 1989. The evidence at trial showed that appellant's checking account balance was at or below zero numerous times during that period. Appellant argues her control over the Swors' money ceased after she spent it for her own purposes. We agree. Once appellant spent the Swors' money, she was no longer possessing or controlling it for purposes of the statute. *See O'Hagan,* 474 N.W.2d at 621. Appellant's misuse of these funds falls outside the three-year limitation period, because the crime was complete several weeks before November 19, 1989.

Appellant deposited one check from the Swors on November 16, 1989 and another on December 26, 1989. The evidence at trial showed these checks were payments for merchandise already received by the Swors, rather than deposits for future merchandise. While appellant was indeed controlling these funds on or after November 19, 1989, they cannot form the basis for her conviction because these funds belonged to appellant upon receipt.

## DECISION

Because appellant's crime was completed more than three years before the complaint was filed, her prosecution was barred by the statute of limitations. Our resolution of this issue renders appellant's remaining arguments moot. Appellant's conviction is reversed.

**Reversed.**

DAVIES, Judge (concurring specially).

While I agree with the result, I write separately because I believe it appropriate to address appellant's second issue as well as the statute of limitations argument. I would reverse appellant's conviction on the basis of insufficient evidence of the crime charged.

Appellant was charged under a statute that makes it a crime to retain possession of another's movable property without the oth-

er's consent. Minn.Stat. § 609.52, subd. 2(1). To establish that appellant improperly retained the Swors' money, the state must first show that the money remained the Swors' property while in appellant's possession. *Id.* To accomplish this, the state must show the existence of a trust relationship between the parties.

To establish that appellant held the Swors' money as a trustee, it must be shown that the parties: (1) designated appellant as a trustee subject to enforceable duties, (2) designated the Swors as beneficiaries with enforceable rights, and (3) paid the money to appellant as a definite trust res, so that, while appellant had legal title, the Swors had a beneficial interest. *See In re Bush's Trust,* 249 Minn. 36, 43, 81 N.W.2d 615, 620 (1957) (discussing the three essential elements of an express trust). The state did not prove those elements and it made no effort to do so.

A debt is not a trust because it involves no fiduciary relationship between the parties. *Farmers State Bank of Fosston v. Sig Ellingson & Co.,* 218 Minn. 411, 418, 16 N.W.2d 319, 323 (1944). The difference between a trust and a debt lies primarily in the fact that a trust beneficiary holds a beneficial interest in the trust property, while a creditor has only a personal claim against the debtor. *Id.*

The parties' manifest intentions dictate whether a particular transaction has resulted in a debt or a trust. *Id.* Thus, where one party pays money to another, a trust is created only if the parties intended that the money be held or used to benefit the payer or someone else. *Id.* On the other hand, a debt is created if the parties intended that the person receiving the money has unrestricted use of it and is only liable to pay a similar amount back to the payer or to a third person. *Id.*

There was no evidence at trial to show appellant held the 50 percent pay-in-advance checks as a trustee for the Swors. Rather, the evidence shows the Swors paid appellant to order and deliver furniture and accessories for the Swors' residence, much as traditional retailers do on a pay-in-advance con-

tract.[1] Appellant—as the Swors' expected—ordered merchandise in her own name or the name of her firm, not in the Swors' name. Similarly, the Swors' checks were made out to appellant rather than to the various manufacturers and vendors of the merchandise or to a trust account.

The Swors' payments became appellant's money upon receipt, and the Swors became appellant's creditor, rather than beneficiaries of a trust. Appellant was not handling the Swors' money, she was handling her own money, for which she promised to deliver merchandise. *See id.* ("Where money paid to another is not required to be segregated by the payee and held as a separate fund for the benefit of the payor, there is no trust."). When the merchandise was not delivered, appellant breached the contract, but she did not violate the theft statute.

In short, appellant was convicted of stealing her own money.

---

1. The majority errs in its reliance on *State v. O'Hagan,* 474 N.W.2d 613 (Minn.App.1991). Appellant's actions here stand in stark contrast to the actions of the defendant in *O'Hagan.* There, an attorney took $500,000 in escrow funds that had been wired directly to his law firm's "general trust account." *Id.* at 616. And the attorney subsequently transferred the money to a separate, interest-bearing trust account entitled "Dorsey & Whitney as trustee for Northrup King." *Id.* at 616. But here, the Swors' never directed that funds be placed into a trust account, nor did they intend for appellant to act as trustee; the Swors wrote checks payable to appellant, personally, so she could purchase furniture and accessories—her stock in trade—for delivery to the Swors.